**J. C. PENNEY–GWINN CORPORATION v. McARDLE et al. THE MASSACHUSETTS. THE LAWRENCE.**

Circuit Court of Appeals, Fifth Circuit.
June 30, 1928.

Rehearing Denied July 27, 1928.

Nos. 5268, 5269.

1. **Maritime liens ⬥⇒3—Vessel must have been engaged in maritime venture, to give admiralty lien thereon for supplies or advances.**

It is essential, in order to maintain an admiralty lien on a vessel for supplies or advances, that she be at the time engaged in a maritime venture.

2. **Maritime liens ⬥⇒3—One furnishing supplies and advances for dredges, engaged in pumping sand from bottom of bay to fill in lands held not entitled to maritime lien.**

One furnishing supplies, equipment, labor, and advances for steam suction dredges employed solely in pumping sand from bottom of bay and distributing it over land for purpose of filling in the land, owned by the owners of the vessel, in order to sell the land, held not entitled to maritime lien, since dredges were not engaged in any maritime venture.

Appeals from the District Court of the United States for the Southern District of Florida; Lake Jones, Judge.

Libels by Robert J. McArdle and others against the Shoreland Company, claimant

of the dredge Massachusetts and of the dredge Lawrence, in which the J. C. Penney-Gwinn Corporation intervened. From a decree adverse to it, intervener appeals. Reversed in part and remanded.

Wm. E. Kay, Thos. B. Adams, R. Ragland, and L. Kurz, all of Jacksonville, Fla. (Kay, Adams, Ragland & Kurz, of Jacksonville, Fla., on the brief), for appellant.

Worth W. Trammell, of Miami, Fla. (Rollin L. Smith and Frederic R. Sanborn, both of New York City, on the brief), for appellee McArdle.

Lee Guest, of Jacksonville, Fla., for appellee J. C. Christopher Co.

S. J. Barco, of Miami, Fla., for appellee Clark Dredging Co.

Wallace F. Perry and Roscoe C. Evans, both of Miami, Fla., for appellee Lancaster Iron Works.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. These two cases involve the same questions of law and practically the same facts, and may be disposed of in one opinion. It appears that the Shoreland Company, a Florida corporation, owned a tract of land in Dado county, Florida, on Biscayne Bay, and was engaged in filling it, by pumping sand and other material from the bottom of the bay. For the purpose of doing this work the Shoreland Company acquired the steam suction dredges Lawrence and Massachusetts, and they were employed solely in doing this work, pumping the material from the bottom and distributing it over the land through pipes.

In October, 1926, Robert McArdle filed separate libels in rem against the said dredges, claiming maritime liens for supplies, equipment, and labor, and for money advanced, and they were seized under admiralty process. A number of other parties filed similar libels. Eventually the various causes were consolidated for trial.

Appellant is the holder of a mortgage for $300,000, covering both dredges, which was far in excess of their value, and was allowed to intervene to assert its rights and oppose the other claims.

Testimony was taken before a commissioner, and all the claims were proved up. A decree was entered October 6, 1927, allowing claims wholly, or in part, as maritime liens, and allowing the claim of appellant under its mortgage, but subordinating it to the maritime liens allowed. After that the dredges were sold. The sale was confirmed and the proceeds were deposited in the registry of the court. The claims allowed as admiralty liens will absorb the entire proceeds.

The record supports the conclusion that most of the supplies for which claims were allowed were furnished on the credit of the owner and not on that of the vessels; but, in the view we take of the law, it is unnecessary to go into details as to this.

[1, 2] There is no doubt that a dredgeboat engaged in navigation, or in doing work for the purpose of improving a channel, or that will be an aid to navigation, in certain circumstances, is subject to admiralty jurisdiction; but a distinction is made where a vessel or other floating structure is not so engaged. It is essential, in order to maintain an admiralty lien on a vessel for supplies or advances, that she be at the time engaged in a maritime venture. It is clear that such is not the case here. Of course, the dredging deepened the water where the material was removed; but that was merely incidental to the work being done. The dredges were not engaged in either commerce or navigation. The purpose of employing them was to make improvements on land, not for the purpose of aiding maritime commerce, but to fill up the land, in order to bring it to the required grade, for the purpose of sale.

The principle underlying maritime liens is that the supplies furnished are intended to benefit the ship, and not the owner. No maritime liens were created on the dredges for any of the supplies or advances shown to have been made. In re Hydraulic Steam Dredge No. 1 (C. C. A.) 80 F. 545; The W. T. Blunt (D. C.) 291 F. 899; North Pac. Steamship Co. v. Hall Bros. Co., 249 U. S. 119, 39 S. Ct. 221, 63 L. Ed. 510; Piedmont, etc., Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 41 S. Ct. 1, 65 L. Ed. 97.

The judgment appealed from will be reversed, to the extent that it allows the claims of appellees and subordinates that of appellant.

Reversed and remanded, for further proceedings not inconsistent with this opinion.