## MELANSON v. BAY STATE DREDGING & CONTRACTING CO.

### No. 1940.

District Court, D. Massachusetts.
Jan. 25, 1943.

Herbert C. Splane and Kneeland & Splane, all of Boston, Mass., for plaintiff.

Dunn, Scannell & Roberts, of Boston, Mass., for defendant.

HEALEY, District Judge.

This is an action brought under the Jones Act, 46 U.S.C.A. § 688. The defendant has filed a motion to dismiss for lack of jurisdiction.

### Facts

On the evidence presented at the hearing on the motion, I find the following facts:

The Bay State Dredging & Contracting Company is a corporation with a usual place of business in Boston in the Commonwealth of Massachusetts.

On March 20, 1942, the defendant was engaged in dredging work in Boston Harbor near Marginal Street in the Orient Heights section of Boston.

The dredging was being done in pursuance of a subcontract with Rowland Tomkins & Son and James A. Munroe & Sons, who had jointly entered into a contract with the United States of America for the construction of a fuel pier and storage facilities to be used by the United States Navy.

The work being performed by the defendant, beginning March 16, 1942, and ending April 4, 1942, was dredging to the depth of 8 feet at mean low water, beginning at the 8-foot contour and carrying the work to the shore line, within 150 feet of the street line.

The 8-foot contour was approximately 500 feet from the shore.

At the time of the injury to the plaintiff's intestate on March 20, 1942, the dredge was at a point now occupied by a part of the pier then to be constructed.

There was evidence to warrant a finding that the dredge was in navigable waters; and I so find.

The dredge had no motive power of its own, but had to be towed from place to place.

In shallow water, it is possible to move the dredge ahead about 30 feet at a time by dropping the bucket attached to the crane and using the bucket as a lever to pull up to it.

Working in conjunction with the dredge was a scow which carried away the dredged material.

The dredging being performed at the time of the accident was for the purpose of furnishing flotation for a pile driver so that piles might be driven in the construction of the fuel pier and storage facilities.

The pier was to extend from the shore to the deep water channel.

The dredge was afloat at all times.

At the time of the injury to plaintiff's intestate, the dredge was not in motion.

The decedent, in the course of his duties on this particular job, operated a winch which regulated spuds used to secure the dredge in position, hung navigation lights, helped repair the dredge or scow in case of a breakdown, helped make the scow fast to the dredge when it pulled alongside, helped wind the scow, washed down the deck, brought food supplies from shore, helped take on fresh water from the water boat and rowed crews from shore to the dredge.

The defendant did not furnish meals to its employees, but the employees could make arrangements with the cook to eat on the dredge at their own expense.

There were sleeping quarters on the dredge which the plaintiff's intestate could use. The plaintiff's intestate could also sleep ashore if he so desired.

At the time of the injury to and death of plaintiff's intestate, the defendant was insured under the provisions of the Massachusetts Workmen's Compensation Act, G.L.(Ter.Ed.) Mass. c. 152 § 1 et seq.

### Discussion

The defendant contends that plaintiff's complaint should be dismissed for lack of jurisdiction on substantially the following grounds:

1. The plaintiff's intestate was not a seaman within the meaning of the Jones Act.

2. The plaintiff's intestate was not engaged in a maritime employment at the time of his injury, but the work upon which he was engaged at the time of said injury was a matter of purely local concern having no direct relation to navigation or commerce, and that plaintiff's remedy, therefore, is exclusively under the Workmen's Compensation Act of Massachusetts.

■ I am of the opinion that the first ground of defendant's contention is without merit. It seems clear that plaintiff's intes-

tate was a seaman within the meaning of the Jones Act. Ellis v. United States, 206 U.S. 246, 27 S.Ct. 600, 51 L.Ed. 1047, 11 Ann.Cas. 589; Saylor v. Taylor, 4 Cir., 77 F. 476; Kibadeaux v. Standard Dredging Co. 5 Cir., 81 F.2d 670; Carumbo v. Cape Cod S. S. Co., 1 Cir., 123 F.2d 991.

In Ellis v. United States, supra, the question arose whether or not persons employed on a dredge in Boston Harbor were seamen. The court there held that they were seamen, saying at page 259 of 206 U.S., at page 603 of 27 S.Ct., 51 L.Ed. 1047, 11 Ann.Cas. 589: "The scows and the floating dredges were vessels. * * * They were within the admiralty jurisdiction of the United States. * * * Therefore all of the hands mentioned in the informations were seamen within the definition in an earlier statute of the United States."

The decedent's duties, or at least some of them, were in aid of navigation, and thus the duties usually performed by a seaman.

■ The defendant's second objection raises a more difficult problem. On which side of the hazy boundary line between federal jurisdiction and the exclusive jurisdiction of the state compensation laws does this case fall. By Article 3, Section 2, of the Constitution of the United States, the judicial power of the United States is extended "to all Cases of admiralty and maritime Jurisdiction." However, there has been developed by the Supreme Court of the United States a doctrine whereby the rules governing local matters, regulation of which would work no material prejudice to the general maritime law, may be modified or supplemented by state statute. Grant Smith-Porter Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008; Millers' Underwriters v. Braud, 270 U.S. 59, 46 S.Ct. 194, 70 L.Ed. 470.

In the Rohde case, the libellant was employed as a carpenter on an uncompleted ship launched in navigable waters. The question presented was whether or not the exclusive features of the Workmen's Compensation Law of the State of Oregon, Laws 1913, c. 112, as amended excluded admiralty jurisdiction. The court there held that libellant's exclusive remedy was under the Workmen's Compensation Law. The court said at pages 475, 476 of 257 U.S., page 158 of 42 S.Ct., 66 L.Ed. 321, 25 A.L.R. 1008:

"The contract for constructing 'The Ahala' was nonmaritime, and although the incompleted structure upon which the accident occurred was lying in navigable waters, neither Rohde's general employment, nor his activities at the time, had any direct relation to navigation or commerce. * * * The injury was suffered within a State whose positive enactment prescribed an exclusive remedy therefor. And as both parties had accepted and proceeded under the statute by making payments to the Industrial Accident Fund it cannot properly be said that they consciously contracted with each other in contemplation of the general system of maritime law. * * * Under such circumstances regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations."

In the Braud case, a diver submerged himself from a floating barge in navigable waters to saw off timbers which were obstructing navigation. While thus submerged, he was drowned. The defendant in error, sister of the decedent, recovered a judgment in the state court under the Workmen's Compensation Act of Texas. Vernon's Ann.Civ.St. Art. 8306 et seq. The Supreme Court, on the authority of the Rohde decision, affirmed the judgment of the state court, saying at pages 64, 65 of 270 U.S., at page 195 of 46 S.Ct., 70 L.Ed. 470: "In the cause now under consideration the record discloses facts sufficient to show a maritime tort to which the general admiralty jurisdiction would extend save for the provisions of the state Compensation Act; but the matter is of mere local concern and its regulation by the state will work no material prejudice to any characteristic feature of the general maritime law. The act prescribes the only remedy; its exclusive features abrogate the right to resort to the admiralty court which otherwise would exist."

On the other hand, there is a line of cases which limit the extent to which state statutes may change, modify or affect the general maritime law. Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas. 1917E, 900; Great Lakes Dredge & Dock Company v. Kierejewski, 261 U.S. 479, 43 S.Ct. 418, 67 L.Ed. 756; Gonsalves v. Morse Dry Dock Co., 266 U.S. 171, 45 S.Ct. 39, 69 L.Ed. 228; Robins Dry Dock Co. v. Dahl, 266 U.S. 449, 45 S.Ct. 157, 69 L.Ed. 372; South Chicago Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Kuhlman v. W. & A. Fletcher Co., 3 Cir., 20 F.2d 465; Kibadeaux v. Standard Dredging Co. 5 Cir., 81 F.2d 670.

The theory on which these cases proceed is that state legislation cannot be enacted affecting matters which are not merely local, but which have direct relation to navigation and commerce.

In Southern Pacific Co. v. Jensen, supra [244 U.S. 205, 37 S.Ct. 529, 61 L.Ed. 1086 L.R.A.1918C, 451, Ann.Cas.1917E, 900], the court in holding that recovery for the death of a stevedore resulting from injuries received on a ship docked in navigable waters could not be had under the state workmen's compensation laws, said that no such state legislation is valid if it "works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations," and again at page 217 of 244 U.S., at page 529 of 37 S.Ct., 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas. 1917E, 900: "The work of a stevedore, in which the deceased was engaging, is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction."

The Kierejewski case, supra, was one in which a master boiler maker, while making repairs on a scow moored in navigable waters, was drowned. The Court there held that jurisdiction was in admiralty, and in distinguishing that case from the Rohde case, said at pages 480, 481, of 261 U.S., page 418 of 43 S.Ct., 67 L.Ed. 756:

"In the cause last cited neither Rohde's general employment nor his activities had any direct relation to navigation or commerce—the matter was purely local—and we were of opinion that application of the state statute, as between the parties, would not work material prejudice to any characteristic feature of the general maritime law or interfere with its proper harmony or uniformity.

"Here the circumstances are very different. Not only was the tort committed

and effective on navigable waters, but the rights and liabilities of the parties are matters which have direct relation to navigation and commerce."

In my opinion, the work of the plaintiff's intestate had a direct relation to navigation and commerce. He was employed on navigable waters. The duties which he performed were maritime in nature. The general work being performed by the dredge was in preparation for the construction of a fuel pier and storage facilities to and from which vessels of the United States Navy would ply. The rights and liabilities of the parties are matters having direct relation to navigation and commerce. The work being performed by the plaintiff's intestate was not of mere local concern. It follows, therefore, that the instant case falls within federal admiralty jurisdiction.

Furthermore, the evidence as presented at the hearing on this motion left some of the essential facts obscure and uncertain. In such a case, I feel that it is the better practice not to dispose of the case on a motion to dismiss, but only after a hearing has been had on the merits. See Frankel v. Bethlehem-Fairfield Shipyard, Inc., D.C., 46 F.Supp. 242.

The defendant has cited many cases in support of his motion, among which are the following: Alaska Packers' Association v. Industrial Accident Commission, 276 U.S. 467, 48 S.Ct. 346, 72 L.Ed. 656; Sultan Railway & Timber Co. v. Department of Labor and Industries, 277 U.S. 135, 48 S.Ct. 505, 72 L.Ed. 820; In re Hydraulic Steam Dredge No. 1, 7 Cir., 80 F. 545; United Dredging Co. v. Lindberg, 18 F.2d 453; J. C. Penney-Gwinn Corporation v. McArdle, 27 F.2d 324, 59 A.L.R. 1342, and Fuentes v. Gulf Coast Dredging Co., 54 F.2d 69.

The last three cases cited were all decided by Circuit Court of Appeals for the Fifth Circuit. Kibadeaux v. Standard Dredging Co., 81 F.2d 670, was also decided by the Circuit Court of Appeals for the Fifth Circuit and was decided at a date later than any of the other three cases mentioned. In that case, the libellant was a deckhand on a dredge which had no motive power, but was towed from port to port. The dredge at the time of libellant's injury was engaged in cleaning out and deepening the slips of a terminal company in which slips vessels plying in coastwise and foreign commerce were habitually moored. The other facts in that case were substantially the same as those in the instant cause. One of the defenses raised was that libellant's remedy was under the Texas Compensation Act. Vernon's Ann. Civ.St. Art. 8306 et seq. The Court there held that jurisdiction was in admiralty, saying at page 673 of 81 F.2d: "We consider that if Kibadeaux was a seaman under the general admiralty law as reshaped by the Merchant Marine Act [46 U.S.C.A. § 861 et seq.], and was also a member of the crew of a vessel, his injury on navigable waters in his employment about his vessel is cognizable in admiralty, and is controlled neither by the Longshoremen's Act [33 U.S.C.A. § 901 et seq.] nor by the Texas statute."

It is indeed difficult to distinguish the instant case from the Kibadeaux case. The Court in the Kibadeaux case distinguishes the other three Fifth Circuit cases which are cited above in this opinion.

In the Fuentes and McArdle cases, supra, the dredges involved were being used for the purpose of filling in land, which activity, of course, is of purely local concern.

In the Lindberg case, supra, the dredge was engaged in cutting a navigable canal across land. Of this case, the Court in the Kibadeaux case said at page 672 of 81 F.2d: "Indeed, injuries occurring on waters which are to become navigable after the dredge cuts a channel, but which have never been navigated before, could hardly be said to occur on navigable waters at all."

In Alaska Packers' Association v. Industrial Accident Commission, supra, the petitioner seeking compensation was injured while standing on land. In Sultan Railway & Timber Co. v. Department of Labor and Industries, supra, the plaintiffs were engaged in logging and in the booming of logs on a navigable river. In re Hydraulic Steam Dredge No. 1, supra, was a case involving a dredge engaged in filling in land for the purpose of building a railroad embankment. Consequently, all of these cases are distinguishable.

Defendant's counsel has recently called to my attention the case of Davis v. Department of Labor and Industries of Washington, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246, decided by the United States Supreme Court on December 14, 1942. The facts in that case are clearly distinguishable from those in the instant case. Obviously, the duties of the petitioner in the Davis case

were not those of a seaman. The question there involved was, whether the petitioner's remedy was under the Federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., or under the workmen's compensation laws of the State of Washington. In the instant case, the question is whether the plaintiff may proceed under the Jones Act or whether he must seek his remedy under the Massachusetts Workmen's Compensation Act.

### Conclusion

I, therefore, find on the facts so far presented that

1. Plaintiff was a seaman within the meaning of the Jones Act.

2. This court has jurisdiction in admiralty of this case.

I do not intend to preclude, nor does this opinion preclude, either party from introducing further evidence tending either to substantiate or contradict the facts as here found.

Defendant's motion to dismiss is denied.