GAHAGAN CONST. CORPORATION v.
ARMAO.
No. 4280.

Circuit Court of Appeals, First Circuit.
Jan. 6, 1948.

302

Paul R. Frederick of Boston, Mass. (C. Petersen and Badger, Pratt, Doyle & Badger, all of Boston, Mass., on the brief), for appellant.

Stanley H. Rudman, of Boston, Mass. (Joseph Schneider and Schneider, Reilly & Bean, all of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This is an action at law under the Jones Act, 41 Stat. 1007, 46 U.S.C.A. § 688. The plaintiff alleges that on November 11, 1945, while he was employed by the defendant as a deck hand and member of the crew of a dredge operated by the defendant on navigable waters of the United States in Boston Harbor, he sustained severe injuries because of the defendant's negligence.

At the time of the accident the defendant, the Gahagan Construction Corporation, was engaged in dredging operations for the Commonwealth of Massachusetts. The defendant was to dredge material from specified areas by the hydraulic method and to place this as fill on embankments at Logan Airport in East Boston. Dredge No. 5 on which the plaintiff was employed was one of the dredges used in this work. It pumped silt and sand from the bottom of the harbor and by means of a pipe line extending from the dredge to the shore deposited it on the airport. It had no motive power of its own and had to be towed by tugs or other vessels when coming from or going to the place of operations. The only machinery aboard was steam turbine engines which operated the mechanisms for digging and hoisting and controlling the "spuds" which were used to hold the dredge in place during actual dredging operations. The spuds were also used in connection with lines attached to anchors, the spuds acting as pivots so that the dredge could move itself forward within short distances. At the time of the accident, about eight o'clock in the evening, the plaintiff had been directed to climb to a platform on the cutter arm to check the navigation lights. As he was about to descend, the cable which operated the arm began to move and his hand was drawn into a pulley block causing him to lose three fingers.

The defendant denied that it was negligent. It also denied that the plaintiff was employed as a member of the crew, or that the accident occurred on navigable waters. Further it denied that this accident was within the maritime jurisdiction of the United States. It contended that the plaintiff's sole remedy, if any, was under the Massachusetts Workmen's Compensation Act, Mass.Gen.Laws, 1932, c. 152, or under the Longshoremen's and Harbor Workers' Act of the United States, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq. The defendant was insured under both of these acts.

At the trial in the lower court, the District Judge refused the defendant's motion for a directed verdict. He also refused to make certain rulings and give certain instructions requested by the defendant. The case was submitted to the jury, which returned a verdict for the plaintiff and final judgment was entered thereon. The defendant's motion to have the verdict set aside and judgment entered in accordance with its motion for a directed verdict was denied. The defendant appealed.

■ It contends that the accident did not occur in navigable waters and, therefore, was outside of the admiralty jurisdiction. This contention is based largely upon testimony that at low tide the flats in the area where the dredge was operating were bare. There was also testimony that all the flats in this area were covered by water only four hours out of twelve. But there was ample testimony to sustain the jury's conclusion that the dredge was plying in navigable waters. The plaintiff testified that at the time of the accident he was removed from the dredge by a tug boat and that it took fifteen to twenty minutes to go to the shore. There was testimony by disinterested witnesses that the average height of the water was approximately eight feet above low mean water-mark. Mr. O'Donnell, who was employed by the State Department of Public Works, as a supervisor, testified that he often went out to the dredge by means of a motor boat, and that there were often tugs around the dredge. He also testified that at the mean high water-mark he could go wherever he pleased with his boat. Mr. Metcalf, who was Coordinator of the Port of Boston during the war, testified that he had seen boats in the area where the dredge operated. He stated that at times there were eleven foot tides in this area and a ship drawing nine feet could navigate there. He also gave as his opinion that the area in which the dredge was operating in November, 1945, was an area of navigable water. The jury could justifiably believe the testimony of these witnesses and its conclusion that the dredge was plying in navigable waters at the time of the accident cannot be upset.

■ The defendant also contends that even if the facts herein show a maritime tort to which the general maritime jurisdiction would extend, the state compensation law abrogates the right to resort to admiralty remedies since the matter is of mere local concern and regulation by the state would work no material prejudice to the characteristic features of the maritime law, and would not interfere with the proper harmony or uniformity of that law. The concept of local concern developed after Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 137 S.Ct. 524, 61 L.Ed. 1086, L.R. A.1918C, 451, Ann.Cas.1917E, 900, and subsequent cases, which propounded the doctrine that state workmen's compensation acts could not constitutionally be applied, even by state courts, to injuries incurred by maritime workers on navigable waters. Just when a matter is of local concern only so that the state law may be applied is a question that has long perplexed the courts. The only verbal test given in the cases is that if the employment has no direct relation to navigation and commerce, if state regulation will not prejudice the uniformity of the maritime law, then state laws may be applied and the general maritime jurisdiction abrogated. Millers' Indemnity Underwriters v. Braud, 1926, 270 U.S. 59, 46 S.Ct. 194, 70 L.Ed. 470; Grant Smith-Porter Ship Co. v. Rohde, 1922, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008. No more definite test has been laid down, with resulting confusion in the lower federal courts. The constitutional basis of the Jensen case has been severely questioned, but the idea of an exclusive maritime law not subject to state law has never been repudiated by the Supreme Court. As late as 1941, the Court in Parker v. Motor Boat Sales, 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184, stated that regardless of the constitutional basis of the Jensen and later decisions, Congress in the enactment of the Longshoremen's and Harbor Workers' Compensation Act had accepted them as defining the line between admiralty and state power.

Some indication of what the Supreme Court considers to be of only local concern may be gathered from an examination of the decisions. Thus, a state workmen's compensation act may be applied to a carpenter injured while working on a ship which has been launched but not yet completed, Grant Smith-Porter Ship Co. v. Rohde, supra; to a diver employed by a shipbuilding company to remove obstructions in the course of a river, Millers' Indemnity Underwriters v. Braud, supra; to a longshoreman injured on land, Smith & Son v. Taylor, 1928, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520; to a lumber inspector temporarily aboard a schooner checking a cargo of lumber being unloaded from another vessel, Rosengrant v. Havard, 1927,

273 U.S. 664, 47 S.Ct. 454, 71 L.Ed. 829; to a person trying to launch a small boat, Alaska Packers' Ass'n v. Industrial Accident Comm., 1928, 276 U.S. 467, 48 S.Ct. 346, 72 L.Ed. 656; to men engaged in logging operations, Sultan Ry. & Timber Co. v. Department of Labor, 1928, 277 U.S. 135, 48 S.Ct. 505, 72 L.Ed. 820; and to an engineer working on a barge dismantling a bridge, Davis v. Department of Labor, 1942, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246. On the other hand the general maritime law is controlling and state laws can not constitutionally be applied to stevedores injured on navigable waters, Minnie v. Port Huron Terminal Co., 1935, 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631; Employers' Liability Assurance Corporation v. Cook, 1930, 281 U.S. 233, 50 S.Ct. 308, 74 L.Ed. 823; Northern Coal & Dock Co. v. Strand, 1928, 278 U.S. 142, 49 S.Ct. 88, 73 L.Ed. 232; Southern Pacific Co. v. Jensen, supra; State of Washington v. Dawson & Co., 1924, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646; nor to repairmen working on ships, Baizley Iron Works v. Span, 1930, 281 U.S. 222, 50 S.Ct. 306, 74 L.Ed. 819; Robins Dry Dock & Repair Co. v. Dahl, 1925, 266 U.S. 449, 45 S.Ct. 157, 69 L.Ed. 372; Gonsalves v. Morse Dry Dock Co., 1924, 266 U.S. 171, 45 S.Ct. 39, 69 L.Ed. 228.

The Supreme Court has indicated that within a shadowy area where it is unclear which law should apply, if either the Longshoremen's Act or a state act is applied, the result will be upheld. See Davis v. Department of Labor, supra. But it should be noted that the overlap is between the federal compensation act and the state acts. It has not been suggested that the Jones Act and the state acts overlap. In no case in the Supreme Court in which the injured person was a seaman performing a seaman's duties on navigable water has state law been held applicable. Even those members of the Supreme Court who customarily dissented in the application of the Jensen rule, concurred in holding state acts inapplicable where the injured person was a seaman covered by the Jones Act. See Employers' Liability Assurance Corporation v. Cook, supra, 281 U.S. at page 237, 50 S.Ct. 308, 74 L.Ed. 823; Northern Coal & Dock Co. v. Strand, supra, 278 U.S. at page 147,

49 S.Ct. 88, 73 L.Ed. 232. Summarily stated, their theory was that the Constitution itself did not prohibit state action in the silence of Congress, but after Congress had spoken there could be no state regulation.

The defendant, however, relies upon a line of decisions in the Fifth Circuit that dredges engaged in digging new channels or improving the shore are not within the maritime jurisdiction. Fuentes v. Gulf Coast Dredging Co., 5 Cir., 1931, 54 F.2d 69; United Dredging Co. v. Lindberg, 5 Cir., 1927, 18 F.2d 453, certiorari denied, 1927, 274 U.S. 759, 47 S.Ct. 769, 71 L.Ed. 1337; see Kibadeaux v. Standard Dredging Co., 5 Cir., 1936, 81 F.2d 670, 672, certiorari denied, 1936, 299 U.S. 549, 57 S.Ct. 12, 81 L.Ed. 404. And this view that a dredge which is picking up silt from the bottom and piping it on to land for use as fill is not engaged in a maritime occupation is supported by a dictum in a case arising in this circuit. See Melanson v. Bay State Dredging & Construction Co., D.C.Mass.1943, 62 F. Supp. 482, 485. The Fifth Circuit cases perhaps may rest on the ground that the dredges were not in navigable water before the start of the dredging operations, as was suggested in the Kibadeaux case, supra, 81 F.2d at page 672. And later cases in that circuit may indicate a departure from this line. Cf. Standard Dredging Corporation v. Henderson, 5 Cir., 1945, 150 F.2d 78; Radcliff Gravel Co. v. Henderson, 5 Cir., 1943, 138 F.2d 549, certiorari denied, 1944, 321 U.S. 782, 64 S.Ct. 638, 88 L.Ed. 1074. But to the extent to which the Fuentes and Lindberg cases are not distinguishable, we decline to follow them.

Perhaps the extension by the circuit courts of the local concern doctrine is understandable in view of the general disapproval of the Jensen rule. But even if this disapproval should result in extension of the applicability of state laws, it would not seem to justify using the exception to the Jensen rule to restrict the applicability of the maritime law in this case. Compare Davis v. Department of Labor, supra, with Parker v. Motor Boat Sales, supra. Since the Supreme Court has reaffirmed the Jensen line of demarcation between state law and admiralty, even if placing it on another theory than the constitutional one, and since

this case comes to us after a jury finding that the Jones Act is applicable, we think that the local concern doctrine should not be used to nullify that verdict. So we conclude that if the plaintiff was a seaman injured on navigable waters, there is no place for the application of the doctrine of local concern.

We thus turn to a consideration of whether the plaintiff is a seaman within the meaning of the Jones Act. In Carumbo v. Cape Cod S. S. Co., 1 Cir., 1941, 123 F.2d 991, we defined a seaman as one who does any sort of work aboard a ship in navigation. We think the plaintiff clearly comes within that broad definition. We have little difficulty then in concluding that the admiralty jurisdiction is not abrogated by the state compensation law. The plaintiff was engaged in a maritime occupation, on navigable waters, aboard a vessel on which he was regularly employed. Certainly, he was more closely connected with a maritime occupation and had a more direct relation to navigation than the decedent in Parker v. Motor Boat Sales, supra. In that case the Court stated that although the area in which admiralty jurisdiction is exclusive and state action forbidden is of shadowy limits, a janitor or porter employed by a motor boat sales company, who was killed while assisting another employee to test a motor in the James River, was clearly within the admiralty jurisdiction. If that case is considered as based on the policy of giving great weight to the findings of the deputy commissioner who there found that admiralty jurisdiction was not ousted, similarly this case may be rested on the finding of the jury that the plaintiff was a seaman on a vessel engaged in navigation on navigable waters.

The defendant's next contention raises a more difficult question. It urges that even if the state compensation act is not applicable, the Longshoremen's and Harbor Workers' Compensation Act of the United States is, and its exclusive remedy forecloses resort to the Jones Act. Defendant insists that the plaintiff was not a member of a crew of any vessel so as to be exempt from the Longshoremen's Act. It is not disputed that Dredge No. 5 is a vessel within the meaning of the statutory definition of vessel, as including "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." Rev. Stat.1875, § 3, 1 U.S.C.A. § 3. The captain of the dredge testified that it had come from New York to Boston with eleven men on board, and that all of them slept and ate on the dredge during the voyage. It is immaterial that it has no motive power of its own. Norton v. Warner Co., 1944, 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 430. But the defendant does dispute that the plaintiff was a member of the crew.

As the Supreme Court has stated, the word crew does not have an absolutely unvarying legal significance. Even if the facts are undisputed, the question of whether a party is a member of the crew is not necessarily one of law. If different conclusions may be drawn from the facts, the determination of the finder of facts must stand. South Chicago Coal & Dock Co. v. Bassett, 1940, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732. Each case presents a different situation. No single factor is controlling, but the whole context must be considered. In Norton v. Warner Co., supra [321 U.S. 565, 64 S.Ct. 751], crew was defined as including those naturally and primarily on board to aid in navigation, but navigation was not limited to "putting over the helm"; it embraces duties essential for other purposes. The Court stated that crew includes all those who contribute to the labors about the operation and welfare of the ship when on the voyage. In the Carumbo case, we said: "The requirements that the ship be in navigation; that there be a more or less permanent connection with the ship; and that the worker be aboard primarily to aid in navigation appear to us to be the essential and decisive elements of the definition of a 'member of a crew'. It is most important to note that one is aiding in navigation even though he happens to be a cook or an engineer. The whole ship's company is aiding in navigation." 123 F.2d at page 995.

If the jury found that the plaintiff was a member of the crew, the question before us is, can the plaintiff be considered a

member of the crew taking the view of the evidence most favorable to him? But the defendant insists that the question of whether the plaintiff was a member of the crew was never submitted to the jury, and there was no finding on this point; thus we should either say as a matter of law that he was not a member of the crew and direct judgment to be entered for the defendant, or else remand for a new trial. It is true that the district judge refused to charge specifically that the jury must find that the plaintiff was a member of the crew; and in fact he did not use the expression "member of a crew" in his charge. But he did instruct the jury that for the plaintiff to recover, they must find that the dredge was plying in navigable waters and that the plaintiff was a seaman. The judge then defined seaman, as he was using the term, by stating that there must be a connection with a vessel, and that the person must play some part in connection with the labor about the operation and welfare of the vessel while in navigable waters. He repeated this two times stressing that the jury must decide whether this plaintiff's labors had to do with the welfare and operation of Dredge No. 5 while it was plying in navigable waters. He also told the jury it could consider whether the plaintiff signed articles or had a license or slept on board or had his meals cooked on board, but that these were not absolutely binding.

Although perhaps it would have been preferable for the trial judge to use the term "member of the crew" and then define it, there is no magic in that phrase that absolutely requires its use in a charge. The words are not such as to have any peculiar or particular significance to a jury. The judge would have to define the term in any event. If his definition was correct, there was no reverible error in failing to use the words themselves. A comparison of the judge's definition with the definition in Norton v. Warner Co., above set forth, shows that he used almost the same words there used. And his charge meets the test we laid down in the Carumbo case. We think it clear the jury in substance found that the plaintiff was a member of the crew, although it did not consider those exact words.

The only question then is whether there is substantial evidence to support the finding of the jury. The defendant maintains that the plaintiff was employed as a laborer; that he had no duties of navigation except incidental ones such as throwing the line or making fast and unfast; that he signed no articles; that he slept off the dredge and was furnished no food on the dredge. Also he was paid on an hourly basis and he had had no previous nautical training. But on the other hand, the plaintiff testified that he was hired as a seaman; for purposes of payment he was classified as a deckhand; and that he was told to take orders from the captain and mate of the dredge. His duties included picking up the line, repairing the line, fixing anchors, setting up navigation lights, working on the tugboat now and then, checking the running lights, washing the decks and serving coffee to the leverman. He had been hired to work on the dredge and had worked on it since his employement in July, 1945. The operator of the dredge testified that the plaintiff cleaned up around the dredge, worked on the pump in the hold, and took bearings on the lights which marked the course the dredge was to dig. The captain of the dredge testified that the deckhands helped clean out the pump and generally helped the mates. We do not think that in light of this evidence the jury's conclusion can be upset. In the Carumbo case, we held there was substantial evidence to support a finding that the plaintiff there was a member of the crew, although he was paid by the hour, and ate and slept on shore. In Schantz v. American Dredging Co., 3 Cir., 1943, 138 F.2d 534, which involved a deckhand on a hoister who worked an eight hour day, was paid overtime, and lived and boarded ashore, it was held that a conclusion that he was a member of the crew would be supported by the facts. And in Maryland Casualty Co. v. Lawson, 5 Cir., 1938, 94 F.2d 190, an employee who signed no articles, who was not shown to be an experienced seaman, but who worked a daily shift of eight hours attached to a tug and scow which attended a dredge, was held to be a member of the crew by the court which set aside a compensation award. See also Pariser v. City of New York, 2 Cir., 1945, 146

F.2d 431 and Melanson v. Bay State Dredging & Contracting Co., supra, holding employees on dredges to be members of the crew.

The defendant cites in support of his contention South Chicago Coal & Dock Co. v. Bassett, supra, which affirmed a compensation award under the Longshoremen's Act. In that case, the employee was employed aboard a lighter used to fuel boats. His main job was to facilitate the flow of coal as other boats were being fueled. He had no real duties pertaining to navigation, except the incidental task of throwing ropes or making the boat fast, which could be performed equally well by a harbor worker. He was not on board to aid in navigation, since his primary duty was to aid in unloading while the boat was not in motion. His work thus resembled that of a stevedore. This evidence was held sufficient to sustain the deputy commissioner's ruling that he was not a member of the crew of a vessel. That the Bassett case rests in large part upon the policy of giving great weight to the findings of the trier of fact is indicated by the Supreme Court's subsequent reversal of a case in which the district judge, deciding that the employee was not a member of the crew, had dismissed a Jones Act suit. The Supreme Court in a per curiam reversed on the authority of the Bassett case, thus indicating that the question was one of fact for the jury. Cantey v. McLain Line, 1941, 312 U.S. 667, 61 S.Ct. 829, 85 L.Ed. 1111; see Bowen v. Shamrock Towing Co., 2 Cir., 1943, 139 F.2d 674, 676. We do not think the Bassett case furnishes any support to the defendant's contention that we should reverse the finding of the jury here.

The defendant's final contention is that the plaintiff by accepting payments under the Massachusetts Compensation Act is estopped or has waived his right to obtain relief under the Jones Act. There is no question but that the plaintiff did receive payment of compensation under the Massachusetts Act and that the compensation was paid under an agreement filed with the State Board. There is no evidence that the plaintiff was represented by counsel at the time the agreement was made although he was represented when later payments were received. We do not think the mere receipt of payments under the state act is sufficient to bind the plaintiff here and prevent his pursuing other remedies he might have on either the law or admiralty side of the court. Kibadeaux v. Standard Dredging Co., supra; cf. Bay State Dredging & Contracting Co. v Porter, 1 Cir., 1946, 153 F.2d 827; Bretsky v. Lehigh Valley R. R. Co., 2 Cir., 1946, 156 F.2d 594. In cases involving actual releases, the courts are scrupulous to see that the plaintiff fully understood the rights that he was giving up. Here, there was no actual release given by the plaintiff, and we do not think such a release should be implied from the receipt of payments. There is no question of double recovery here, since the amounts received under the state act were deducted from the verdict awarded him under the Jones Act.

The judgment of the District Court is affirmed.