## THE CITY OF TAWAS.

*(District Court, E. D. Michigan. July 2, 1880.)*

1. MARSHALLING CLAIMS — ORDER OF PAYMENT. — Claims against the proceeds of sales, in cases arising upon the lakes, are usually paid in the following order: (1) First costs of sale, and incident to the custody of the vessel; (2) seamen's wages, unless there be subsequent salvage; (3) claims for towage and necessaries furnished in a foreign port; (4) claims for supplies and materials furnished in the home port, for which a lien is given by the state law; (5) mortgages.

2. SAME — CLASSIFICATION. — Claims of the same merit are classified according to the years in which they accrue, and those of a later year are paid in preference to those of a former. This does not, however, apply to claims of different ranks or merit.

3. SAME — CLAIM OF INFERIOR CLASS. — A claim of an inferior class is not entitled to payment in preference to a claim of a superior class, because the former happens to be in decree before a libel for the latter is filed.

4. SAME — MARITIME AND STATE LIENS. — Maritime liens are entitled to be paid in preference to those under a state law.

5. SAME — SALE PENDENTE LITE. — Where the vessel is sold *pendente lite*, the date of the sale determines nothing as to the order in which claims should be paid.

6. SAME—CLAIMS IN DECREE.—Claims not in decree at the time of making report classifying claims are not to be postponed to those then in decree, but when the final order for distribution is made the clerk should disregard all claims not then in decree.

7. SAME—LIBEL FILED AFTER REPORT.—Where a libel is not filed until after the report of the clerk classifying claims is made it should be postponed until after all other claims are paid.

Rules adopted for the marshalling and payment of claims.

In Admiralty. On exceptions to clerk's report classifying claims.

The city of Tawas was originally attached upon the libel of Thomas Pitts and John R. Gillett for a towage claim of small amount. Over 30 intervening libels were filed, and the vessel was sold for a sum insufficient to pay the claims against her in full. Reference having been made to the clerk to mashal the claims, he divided them into three classes: (1) Seamen's wages; (2) towage and dockage; (3) repairs and materials furnished in the home port, for which a lien is given by the laws of this state. To this report the following exceptions were filed by the Detroit Dry Dock Company, a lien holder of the third class: (1) That all claims for towage services rendered in the year 1875 are placed in the second class, and preferred to the claim of the dry dock company; (2) that claims for which decrees have not been rendered, and claims for which libels were filed subsequent to the obtaining of the decree by the Detroit Dry Dock Company, are placed in the second class, and preferred to its claim; (3) that the claims mentioned in the second class are preferred to those mentioned in the third class; (4) that claims are placed in the second class and preferred to the claim of the dry dock company, although the libels therefor were filed after the sale of the schooner by this court.

John Bloom, also a claimant of the third class—that is, for necessaries furnished in the home port—excepts to placing the claim of John Horn, for towage, in the second class, upon the ground that his libel was not in decree at the time of making the report, and should, therefore, be postponed to all claims then in decree. He also excepts to the report upon the ground that the libel of Sidney Adams was not filed, or

in decree, until after the report was made, and insists that his claim should be postponed to all other claims.

*J. J. Speed,* for the Dry Dock Company.

*Mr. Halliday,* for libellant Bloom.

*F. H. Canfield,* for the original libellant.

BROWN, D. J. The subject of marshalling liens in admiralty is one which, unfortunately, is left in great obscurity by the authorities. Many of the rules deduced from the English cases seems inapplicable here. So, also, the principles applied where the contest is between two or three libellants would result in great confusion in cases where 50 or 60 libels are filed against the same vessel. The American authorities, too, are by no means harmonious, and it is scarcely too much to say that each court is a law unto itself.

The order in which liens are paid depends upon four contingencies: (1) The relative merit of the claims; (2) the time at which the claim accrued; (3) the date at which proceedings are commenced for its enforcement; (4) the date of the decree. The practice has grown up in this district, sanctioned by the long acquiescence of the bar, of classifying claims as follows: (1) Seamen's wages; (2) claims for towage and for necessaries furnished in a foreign port; (3) claims for supplies and materials furnished at the home port, for which a lien is given by the state law; (4) mortgages.

Bottomry bonds being unknown on the lakes, no question has ever arisen here with regard to their relative rank. That claims for wages should be paid in preference to all others, except the costs of sale of the ship keeper, and of storage and dockage while the vessel is in the hands of the marshal, and excepting also subsequent salvage, is well settled in all the districts. Whether one claim is entitled to priority over others of equal rank, by reason of the libel being first filed or decree being first obtained upon it, is a matter of very considerable doubt—at least in cases of contract.

Nearly if not all claims against this vessel accrued during the years 1875 and 1876, and the first exception of the dry dock company proceeds upon the theory that claims in the third class accruing in 1876—that is, for repairs furnished in

the home port—should rank claims of the second class, for towage services rendered in 1875. Claims of the same class are sometimes ordered put in the inverse order in which they accrue. This, I believe, is invariably observed in the case of bottomry bonds, the last being put first, and the first last. Maclachlan on Merchant Ship. 652. In some cases it is said that necessaries furnished for the last voyage should be paid in preference to those furnished for a former voyage, and the rule certainly seems a reasonable one as applied to long voyages upon the ocean, but wholly inapplicable to the daily or weekly trips made by vessels upon the lakes. I regard it, however, as a reasonable modification of the general practice that claims of equal rank should be paid *pro rata;* that each year should be considered as a voyage, and that claims accruing the last year should be paid in preference to claims of the same rank accruing the year before, each season of navigation here being separated from the preceding season by four months of inaction. This will encourage diligence in the prosecution of claims, and prevent the proceeds of sale from being absorbed by dilatory creditors. But I know of no authority or principle which would justify the court in ordering a claim of an inferior rank to be paid prior to claims of a superior rank, on the ground that the latter claim accrued the year before the former, unless the defence of stale claim is pleaded to the libel. Maclachlan, 652. I think, therefore, the first exception is not well taken.

The second exception is based upon the theory that claims for which libels were filed subsequent to the decree in the case of *The Dry Dock Co.* are preferred to its claim. While there are several authorities to the effect that a creditor who obtains a final decree before another creditor, having a coordinate or equal claim, has intervened to enforce such claim, is entitled to be paid in preference to him who did not assert his right until after the entry of such decree, (see *The Saracen*, 2 W. Rob. 451; *The America*, 16 Law Rep. 264,) I know of none which give such preference to a creditor holding a claim of an inferior class, notwithstanding he may have

obtained a decree, before the filing of other libels of a higher class.

The third exception is to the effect that claims for towage, which are maritime liens, are preferred to claims for supplies and repairs furnished in the home port, which are liens solely under the state law. I believe the practice is nearly if not quite universal to pay maritime liens in preference to those under the state law. It has long prevailed in this district. I believe it to be founded upon substantial considerations, and I am not disposed to interfere with it. The learned judge of the western district has recently adopted the same rule in the case of *The Alice Getty*..

The fourth exception is to this effect, that claims for the second class, for which libels were filed after the sale of the schooner, are preferred to the claim of the dry dock company. There are, undoubtedly, some cases holding that claims filed after the sale of a vessel should be postponed, but I think they all proceed upon the theory that the sale does not take place until after a final decree has been rendered. In a large number, and perhaps I might say a majority, of cases in this district the vessel is sold *pendente lite*, frequently before *any* decree is rendered, for the purposes of preventing the accumulation of costs, expenses of keeping, and deterioration while lying at the dock. I have encouraged this practice where no objection is made by the owner, and no stipulation is given to pay the claims after a fair opportunity to do so. To postpone claims of an equal or superior rank filed after such a sale, made, perhaps, without any actual notice to the lien holder, might in many cases result in great injustice. My own impression is that the rule is unsound even as applied to claims of equal rank, and still more objectionable where a libellant of an inferior rank seeks to obtain priority over a more meritorious claim. The exceptions of the dry dock company are therefore overruled.

The exception of John Bloom to the libel of John Horn proceeds upon the theory that claims which were not in decree at the time of making the report classifying claims should be

postponed to claims in decree. As the report of the clerk is frequently made upon *ex parte* applications, and for the purpose of informing the court not only what claims are in decree, but what are in process of enforcement, I think it would be inequitable to postpone those which do not happen to be in decree at the time the report is made. When the order is made for distribution, I think the clerk should disregard all claims not *then* in decree, although upon special application the court might order a sufficient amount reserved to pay such claim, if it were litigated, or the creditor has not been guilty of laches in its enforcement. This exception is overruled.

The exception to the libel of Sidney Adams is based upon a different ground, viz.: that his libel was not filed until after the report of the clerk, classifying the claims, was made. I think this exception is well taken, though I find no authority upon the point. Consulting, however, the mere conveniences of practice, there must be a limit within which libels should be filed. The court cannot permit the distribution of proceeds to be forever delayed by the filing of new libels, and the consequent necessity of amending the clerk's report. While it is his duty to report not only the libels in decree, but those in process of enforcement, I think his report should fix the *status* of the claims, and the court ought not to be called upon to open and permit other claims to share in the proceeds, unless for very special reasons, requiring a modification of the rule. I think the report classifying the claims should be based upon the libels actually upon files when the report is ordered, and the distribution upon those in decree when the order for distribution is made. While I intend to be liberal in allowing creditors to obtain payment from the proceeds, I am also disposed to encourage diligence in the enforcement of claims, and to postpone those who allow a whole season to run without seeking to enforce them, as well as those who are not prompt in coming forward and asserting their rights after proceedings have been actually commenced. An order will be made in conformity to this opinion.

The following rule was adopted for the distribution of proceeds:

Whenever the majority of claims against any vessel which has been sold are in decree, upon the applicaton of any person interested in the proceeds the court will order the clerk to classify and marshal the claims against such proceeds, and claims thereafter filed shall be paid only after the payment of those included in his report. Upon the filing of such report, and upon notice to all persons interested, in case no exceptions are filed, the court will order the report confirmed, and the proceeds distributed among those libellants whose claims are then in decree. Decrees subsequently obtained shall be paid only from the remnants, unless in cases where delay has been necessarily occasioned the court shall otherwise order.

NOTE.—See *Dalstrom* v. *Schooner E. M. Davidson*, 1 FED. REP. 259.