### THE GEO. L. HARVEY (two cases).

(District Court, W. D. Washington, N. D. March 25, 1921.)

Nos. 5608, 5613.

Maritime liens ⬦10—Claims for reconstruction of vessel not maritime.

    Claims for labor and material furnished and used in converting a war vessel, after its sale by the Navy Department, into a vessel of commerce and trade, *held* for work in the nature of construction, not giving a right to maritime liens, nor within the admiralty jurisdiction.

In Admiralty. Suits by H. G. McLaughlin, a corporation, and others, and by J. A. Engstrom, against the steamer Geo. L. Harvey. On objection to jurisdiction. Sustained as to certain of the claims, and referred to commissioner as to others.

Daniel Landon and James A. Kiefer, both of Seattle, Wash., for libelants.

Moncrief Cameron, of Seattle, Wash., for respondent.

Robert C. Saunders, U. S. Atty., and F. C. Reagan, Asst. U. S. Atty., both of Seattle, Wash., for the United States.

Walter S. Fulton, of Seattle, Wash., for intervener Bolcom-Canal Lumber Co.

Trefethen & Findley, of Seattle, Wash., for intervener Schwabacher Hardware Co.

James Kiefer, of Seattle, Wash., for interveners Christianson and Skoog.

William H. Gorham, of Seattle, Wash., for intervener Erland & Co., Inc.

Daniel Landon, of Seattle, Wash., for interveners Panama Pacific Commercial Co. and others.

G. E. Steiner, of Seattle, Wash., for intervener Pacific Net & Twine Co.

John W. Heal, Jr., of Seattle, Wash., for intervener Brower.

Shorett, McLaren & Shorett, of Seattle, Wash., for intervener John Paul Lumber Co.

Peters & Powell, of Seattle, Wash., for intervener Northwest Fuel & Supply Co.

Jas. A. Dougan, of Seattle, Wash., for intervener Augustine & Kyer.

Farrell, Kane & Stratton, of Seattle, Wash., for intervener Union Oil Co. of California.

W. M. Williams, of Seattle, Wash., for intervener Partlow.

Chadwick, McMicken, Ramsey & Rupp, of Seattle, Wash., for intervener McMicken.

NETERER, District Judge. McLaughlin Company, a corporation, and five others, present a libel against the respondent for labor and material and seamen's wages, civil and maritime, in the sum of $668, $178.90, $48.38, $48, $381.75, and $74, respectively. Engstrom libels for wages for labor performed on the vessel to the amount of $111. Both libels were consolidated. Fourteen intervening libels have been filed, to cover wages for labor performed, amounting to $2,434.45. Seventeen intervening libels have been filed for material furnished, in the sum of $4,459.85. The United States has filed its appearance, through the United States attorney, and "suggests to the court and gives it to understand and be informed that the above causes involve property and property rights of the United States and are not maintainable against the United States, and that the liens of libels are not maritime liens, and therefore are not within the jurisdiction of this court sitting in admiralty." It is stipulated that the vessel was sold by the United States Navy Department to the Seattle Fisheries Association May 21, 1920, for a small cash consideration and a mortgage for $14,975.

The vessel was built at the Puget Sound Navy Yard by the navy for war purposes—a submarine chaser No. 293—and at the date of sale was a war vessel. Upon delivery to the purchaser it was towed to a dock at the port of Seattle, where the forward cabins were taken off, two bulkheads removed in the hold, two hatches cut out in the deck, a rail built on the deck, vessel lined for the purpose of fitting her for a fishing vessel, and one of the engines was removed. It was then taken to the plant of the West Seattle Boat & Engine Works, where the cutting and lining was finished, and winch and an auxiliary engine installed to operate the winch, and equipped for a fishing boat. It was put on the ways and painted. All of the work performed and material furnished was necessary for converting the vessel from a war vessel to a fishing boat. It was registered September 8, 1920, and was first in commercial navigation September 12, 1920.

The issue to be determined is whether the services rendered and the material furnished were rendered and furnished for a marine service. If it was not, then admiralty and maritime jurisdiction would not obtain. It is primer law that a contract for the construction of a ship or supplying materials therefor is nonmaritime, and not within the admiralty jurisdiction. The admiralty jurisdiction affords peculiar remedies, because of the movable character of the vessel, and in order to bring a vessel within such jurisdiction it must be engaged as an instrument of "navigation, commerce, and trade." Salvor Wrecking Co.

v. Sectional Dock Co., 21 Fed. Cas. 281; The Frances L. Skinner (D. C.) 248 Fed. 818. It may be said that—

"A ship is born when she is launched, and lives so long as her identity is preserved. Prior to her launching she is a mere congeries of wood and iron—an ordinary piece of personal property—as distinctly a land structure as a house, and subject only to mechanics' liens created by state law and enforceable in the state courts. In the baptism of launching she receives her name, and from the moment her keel touches the water she is transformed, and becomes a subject of admiralty jurisdiction." Tucker v. Alexandroff, 183 U. S. 424–438, 22 Sup. Ct. 195, 201, 46 L. Ed. 264.

This vessel, however, upon launching, was foreign to commerce and trade. It did not receive, upon launching, a commercial or trade status. It was not subject to admiralty jurisdiction, and before she would be subject to admiralty she must be divested of the attributes of war, and clothed with the conveniences and necessities of commerce and trade. The work performed and the material furnished, except as to Augustine & Kyer and possibly some portions of other claims, is clearly in the nature of construction, and bore in no sense a relation to trade and commerce. The vessel was not registered, and had at no time embarked upon a mission of trade. It had not been fitted to function as intended, and whatever is necessary to qualify it to enter upon the commerce and trade is a part of the construction. The Pradox (D. C.) 61 Fed. 860.

Judge Bellinger in McMaster v. One Dredge (D. C.) 95 Fed. 832, held that a contract for changing a scow into a dredge is a contract for building the dredge, and admiralty is without jurisdiction to enforce a lien given the builder by a state statute. The Supreme Court, in Thames Towboat Co. v. Schooner Francis McDonald et al., 254 U. S. 242, 41 Sup. Ct. 65, 65 L. Ed. ——, December 6, 1920, said:

"The doctrine is now firmly established that contracts to construct entirely new ships are nonmaritime, because not nearly enough related to any rights and duties pertaining to commerce and navigation. It is said that in no proper sense can they be regarded as directly and immediately connected with navigation or commerce by water. Edwards v. Elliott, 21 Wall. 532; * * * The William Windom, 73 Fed. 496; Pacific Surety Co. v. Leatham & S. Tow. & Wreck. Co., 151 Fed. 440, 80 C. C. A. 670. And we think the same reasons which exclude such contracts from admiralty jurisdiction likewise apply to agreements made after the hull is in the water, for the work and material necessary to consummate a partial construction and bring the vessel into condition to function as intended."

The language applies to this issue. The war vessel was not related to any rights and duties pertaining to commerce, navigation, and trade, and not until she was fitted suitably for such business was she constructed, and not until the necessary labor and materials were supplied and furnished was the vessel qualified to enter into the service of navigation and trade. The claim of Augustine & Kyer was for supplies furnished September 11, 1920, for a mission of trade upon which the vessel embarked September 13, 1920.

There are some items in some of the intervening libels that may properly be supplies, as distinguished from material and labor necessary to consummate the construction, for the purposes of bringing the

vessel into condition to function as designed, and the case will be referred back to the commissioner, to segregate and determine these items, and for such purpose to take such further testimony as may be necessary, and to report such findings and conclusions to the court.