CAMPBELL v. LOZNICKA.

THE SCORPIO.

No. 12764.

United States Court of Appeals Fifth Circuit.

April 14, 1950.

WALLER, Circuit Judge.

This libel *in rem,* by the operator of a boat works, against the American Yacht Scorpio, her boats, tackles, apparel, furniture, fixtures, fittings, engines, etc., alleged that the vessel on January 13, 1948, was lying in the Port of Jacksonville, and in need of repairs and supplies, whereupon the libelant was engaged by the owner of such vessel "to make said repairs and furnish said supplies", and that he had furnished the supplies and made the repairs to the reasonable and just value of $26,249.27.

The libelee, in his answer, stated: "He admits that on the date alleged in the Second paragraph of said Libel, that the Yacht 'Scorpio' was in need of repairs and that he engaged the libelant to make said repairs and to furnish said materials, * * * and he admits that the libelant between the dates alleged in said libel, did furnish certain materials and did make certain repairs and did perform certain labor on the said yacht, for which the libelant charged the sum of $26,249.27, * * *."

Thus it was that in the pleadings of both parties there was revealed a contract to make repairs, and the making of repairs, on the yacht Scorpio.

Libelee also filed a cross-libel in which he asserted:

"That on or about the middle of November, A.D. 1947 the Cross-Libelant purchased a Navy hull, then lying at St. Mary's, Georgia, and had her towed to the port of Jacksonville, Florida, and that it was his desire to have her rebuilt renovated and changed from the form of a Navy Bomb Target Boat into a pleasure yacht, and to that end he consulted a Mr. Martin of the St. Johns Dry Dock & Machine Works and made arrangements with him to convert the same to a pleasure yacht and to make the changes, alterations, repairs and additions which would be necessary and which the Cross-Libelant desired * * *."

"* * * and it was not until he returned about July 13th, that he became

Martin H. Long, Jacksonville, Fla., for appellant.

Harry H. Martin, Jacksonville, Fla., for appellee.

Before HUTCHESON, Chief Judge, and WALLER and RUSSELL, Circuit Judges.

convinced that the conversion was not being carried on as it should be; * * * and that the boat was not being properly rebuilt, whereupon he removed the said boat from the custody and care of the Cross-Respondent and took her to another boat yard."

The libelee asserted that the work of the libelant was not done in a workmanlike manner, wherefore he deemed himself damaged in the amount of $25,000, for which he sought judgment by the cross-libel.

Exceptions to the cross-libel, and a motion to dismiss the libel, as well as the cross-libel, were filed by the libelant, predicated upon the contention that "the contract is in the nature of the construction of a vessel and is not within the admiralty and maritime jurisdiction of this Court." The lower court dismissed the libel and cross-libel, and cross-libelee appealed. In its opinion, reported at D.C., 81 F.Supp. 352, the lower court relied upon The George L. Harvey, D.C., 273 F. 972, and Thames Towboat Company v. Schooner "Francis McDonald", 254 U.S. 242, 41 S. Ct. 65, 65 L.Ed. 245.

In The George L. Harvey case it was held that claims for labor and material for converting and equipping a war vessel for private operation were nonmaritime and not within admiralty jurisdiction.

■ Section 741 of Title 46 U.S.C.A., referred to in the District Judge's opinion, seems to deny jurisdiction of a libel *in rem* against any vessel of the United States, while Section 742 permits a libel *in personam* against merchant vessels or tug boats, but we see no applicability of either of these sections here because the United States had sold the Scorpio for cash, and it was no longer subject to the prohibition of Section 741 against a libel *in rem*.

■ It is established beyond all controversy that even though Section 2 of Article III of the Federal Constitution provides that the judicial power of the Federal Courts shall extend to *all* cases of admiralty and maritime jurisdiction, nevertheless courts of admiralty have no jurisdiction of claims for work and labor done in the construction of a vessel,[1] which prior to launching is considered in admiralty merely as the equivalent of a land structure. Section 971 of Title 46 U.S. C.A., provides: "Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, * * .* upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

And Section 3 of Title 1, U.S.C.A.—a statute that has been in effect since 1866 —contains the following definition of the word "vessel": "The word 'vessel' includes every description of water craft or other artificial contrivance used, *or capable of being used,* as a means of transportation on water." (Emphasis supplied.)

In applying the test of the latter statute it must be conceded that whether the craft here be a bomb target boat or a yacht, it was some kind of a "water craft". It was afloat. It was towed from St. Mary's, Georgia, to Jacksonville. It was, according to the cross-libel, "a hull", but whether it had deck, cabin, bridges, super-structure, rudder, auxiliary motor, winches, anchors, and the like, or whether it had ever been equipped with engines, boilers, and power wherewith to navigate, or whether it had ever been navigated either before or during the ownership of the United States, does not appear. The terms "hull" and "Navy Bomb Target Boat", as used in the cross-libel, seems to have no specific definitions in the law. As a Navy bomb target it might have been fully equipped to move as a vessel; or it might have been a vessel whose long use and ancient age fitted it for an early one-way voyage to

1. Peoples Ferry Co. v. Beers, 20 How. 393, 15 L.Ed. 961; Thames Towboat Company v. The "Francis McDonald", 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245.

Davy Jones' locker for aught that the record reveals.[2]

■ It was not essential to admiralty jurisdiction of the court to show that the Scorpio had hauled any part of the commerce of the world or that it had navigated any of the seven seas. The statute provides that if it is an "artificial contrivance used, or capable of being used, as a means of transportation on water", it is a vessel, and, under Section 971 of Title 46 U.S.C.A., any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, upon the order of the owner would have a maritime lien thereon enforceable by a suit *in rem* in admiralty.

■ Since the libelant alleged that the work was repairs to a yacht, and the answer admitted that the contract was for repairs to a yacht, we think that the allegations of the cross-libel that the water craft was a former Navy target boat hull intended to be converted into a yacht, even if inconsistent with the allegations in the libel and answer, were insufficient, as a matter of law, to divest a court of admiralty of the jurisdiction clearly alleged in the libel and admitted in the answer. There were no facts in the record or in evidence to the contrary, and the allegation in the record that the craft had been a bomb target boat and was a hull capable of being towed is not inconsistent with an inference that it was capable of being used for transportation even though it had never actually been so used theretofore. Showboats, dredges, barges, scows, yachts, and the like have been held to be vessels within the jurisdiction of admiralty. See: Self v. Central Station Equipment Co., 5 Cir., 65 F.2d 789; The International, 3 Cir., 89 F. 484; Charles Barnes Co. v. One Dredge Boat, 6 Cir., 169 F. 895; The Devonshire, C.C., 13 F. 39; The Wilmington, 4 Cir., 48 F. 566; Disbrow v. The Walsh Brothers, 2 Cir., 36 F. 607; Seabrook v. Raft of Railroad Cross-Ties, 4 Cir., 40 F. 596; Saylor v. Taylor, 4 Cir., 77 F. 476; The Alabama, 5 Cir., 22 F. 449; U. S. v. Holmes, C.C., 104 F. 884; The Ark, D.C., S.D.Fla., 17 F.2d 446; The Pinthis, 3 Cir., 286 F. 122; American Shipbuilding & Dock Corp. v. John Rourke & Sons, 5 Cir., 4 F.2d 845.

Whether or not the Scorpio had ever sailed the seas or transported any portion of the world's commerce, is, therefore, not controlling. Undoubtedly, it was a type of water craft, long afloat, readily towable, and entirely capable of being used, even if inefficiently, in transportation, when moved by tug, and was a "vessel" within the wording of the statute, and within the intent and purpose of the law as defined in the latest decision of the Supreme Court on the subject, New Bedford Dry Dock Company v. Purdy, 258 U.S. 96, 42 S.Ct. 243, 244, 66 L.Ed. 482, in which the court quoted from U. S. v. The Grace Meade, Fed.Cas.No.15,243: "And generally, it may be held as a principle, that, where the keel, stem, and stern posts and ribs of an old vessel, without being broken up and forming an intact frame, are built upon as a skeleton, the case is one of an old vessel rebuilt, and not of a new vessel. Indeed, without regard to the particular parts reused, if any considerable part of the hull and skeleton of an old vessel in its intact condition, without being broken up, is built upon, the law holds that in such a case it is the old vessel rebuilt, and not a new vessel."

The New Bedford Dry Dock Company v. Purdy case involved a contract to convert a car float, having neither motive power nor steering gear, into a steamer to be used for amusement purposes, with a dance hall, balconies, and rooms, and to be equipped with motive power and steering gear, but with a substantially unchanged

2. The writer is informed, extra judicially, that Navy bomb target boats were generally: gasoline driven; of small but varying sizes; converted from other, and often obsolete, types of water craft; carried a light, protective armour over the deck; and navigated by a small crew under their own power. They were not operated with the idea of sinking them but for the purpose of affording to plane crews an opportunity to drop harmless smoke bombs against them and with the idea of bringing the craft back to shore by the crew that took them out.

**360**

hull. The Supreme Court, after holding that the contract was not one for original construction but one for repairs, made the following significant statement: " * * * We are not disposed to enlarge the compass of the rule approved in Thames Towboat Co. v. The Francis McDonald, under which contracts for the construction of entirely new ships are classed as nonmaritime, or to apply it to agreements of uncertain intendment—reasonable doubts concerning the latter should be resolved in favor of the admiralty jurisdiction. Nor do we think that in cases like the instant one any refined distinction should be made between reconstruction and repairs—the latter word as used in the statute has a broad meaning."

The dismissal of the case upon the pleadings was erroneous.

Reversed and remanded.