David J. PLEASON and I. Dorfman, owners and claimants of THE CAROL ANN, Appellants,

v.

GULFPORT SHIPBUILDING CORPORATION, McIntosh Electric Supply Co., Inc., and H. S. McIntosh, an individual, Appellees.

No. 15151.

United States Court of Appeals, Fifth Circuit.

March 30, 1955.

Paul Y. Cunningham, Brownsville, Tex., Sharpe, Cunningham & Garza, Brownsville, Tex., for appellants.

Louis H. Beard, Leslie M. Ball, George W. Brown, Jr., Beaumont, Tex., Robert H. Kern, Jr., McAllen, Tex., Tatum, Camp & Ball, Beaumont, Tex., for appellee Gulfport Shipbuilding Corp.

Before HOLMES and RIVES, Circuit Judges, and THOMAS, District Judge.

THOMAS, District Judge.

Libels in rem were filed against the M/V Carol Ann by the Gulfport Shipbuilding Corporation, McIntosh Electric Supply Company, Inc., and H. S. McIntosh, individually. The libels sought to establish as maritime liens the costs of certain materials, equipment and labor furnished by the libelants to the M/V Carol Ann in June, July and August of 1952. The appellants filed claim to the Carol Ann, and thereafter filed an answer to the libels. The three separate libels were consolidated for trial. Claimants filed exception to the jurisdiction of the trial court on the grounds that the Carol Ann was not at the time the original libels were filed and was not at the time the materials, equipment and labor were furnished, a "vessel" within the maritime laws of the United States, and was therefore not subject to the admiralty jurisdiction of the United States District Court.

The Carol Ann was built in 1943 as a salvage and repair vessel for the United States Navy. She was 183 feet 8 inches long, with 32-foot 2-inch beam, and a depth of 20 feet; was of wood and steel hull construction; and 1,500 gross tons burden. In 1946, she was declared surplus, and sold to one Davidoff in 1947. She was then converted into a refrigerated cargo carrier, taken to Honduras, and there documented and registered. In September of 1951, while engaged in shrimping operations near Belize, she was grounded in shallow water and her shaft alleys and engine room were flooded. She was later floated and towed across the Gulf of Mexico to Galveston, Texas, thence to Port Arthur, thence to Orange, Texas. During the months of June, July and August 1952, while she was tied up at Port Arthur, the libelants furnished the supplies, equipment and labor which gave rise to the libels.

Through various transfers of title and mortgage foreclosures, claimants became her ultimate owners. From June, through the first part of August 1952, libelants (appellees here) at the request of claimants furnished the materials and performed the services set out in the libels, and put the Carol Ann in good condition to operate as a stationary shrimp processing, freezing, and storage plant. The services performed and materials furnished consisted substantially of (a) repairing and supplementing the cargo refrigeration system; (b) repairing and installing generators, compression motors, engine room bilge pump, fuel oil tanks, circulating water pumps, diesel engines, blowers, electric motors, lube and fuel oil systems, battery racks, and bilge piping.

A prior owner of the Carol Ann had decided to scrap her, and had sold a substantial amount of her tackle and apparel. At the time she was brought in for the above-mentioned repairs, she was in substantially the following condition: her propellers and propeller shafts had been removed; she had no crew; none of her machinery was in operation; she had no light, heat, or power in operation;

her main engines had been completely removed; all of her steering apparatus, with the exception of the rudder, had been removed and sold; her superstructure and masts were intact; her navigation lights were in place, though not operable; her compartmentation, including cargo holds, was intact; and she contained in her crew quarters and elsewhere some articles of furnishings, including bunks, tables, chairs and stoves.

After the services which are the subject of the libel were performed, she was towed across the Gulf of Mexico from Port Arthur to Port Isabel without crew or motive power or operative steering device of any kind. "At Port Isabel she was moored to a dock by steel cables and ropes and engaged in receiving shrimp from trawlers for processing, freezing, storing and resale in commerce, in the same manner as a similar plant would operate on land. Shrimp were delivered on board in baskets just as they are unloaded on a dock or wharf. Telephone and electric lines from land were connected with the Carol Ann, although she had her own power system. The location of the vessel was changed once when she was towed down the ship channel and again secured, in the same manner, in a stationary position." [1]

The sole question involved is: Was the Carol Ann a vessel subject to a maritime lien which could be enforced by a suit in rem at the times in question? We think so.

Section 971 of Title 46 U.S.C.A. provides: "Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

Section 3 of Title 1 U.S.C.A. is as follows: "The word 'vessel' includes every description of water craft or other artificial contrivance used, or *capable of being used,* as a means of transportation on water." (Emphasis ours.) This court speaking through Judge Waller in The Scorpio, reported in 181 F.2d 356, 358, saw fit to emphasize the words " 'capable of being used' " in discussing Section 3 of Title 1. The "Carol Ann" was an artificial contrivance capable of being used as a means of water transportation. It was afloat. Before repairs, it was towed across the Gulf of Mexico; after repairs, it was towed from Port Arthur to Port Isabel, Texas. It had a deck; it had cabins, it had superstructure. It had no motive power of its own; no steering mechanism; but it definitely was capable of being used as a means of transportation under tow. Under the doctrine laid down in The Scorpio, supra, and many other cases, it is plain to us that the "Carol Ann" was a "vessel" subject to a maritime lien, enforceable by suit in rem.

The judgment of the trial court is affirmed.

---

1. The District Court's Findings of Fact.