CITY OF ERIE, Port Commission of the City of Erie, Plaintiff,

v.

S. S. NORTH AMERICAN, her engines, boiler, masts, boats, tackle, anchors, cables, chains, rigging, apparel and furniture, Defendant,

Security-Peoples Trust Company, Applicant for Intervention.

Civ. A. No. 18–67, Erie.

United States District Court
W. D. Pennsylvania.

April 21, 1967.

22. General Statutes of North Carolina § 15–180.

23. See G.S. § 1–277 et seq.

876

Jones, Benson & Dwyer, Erie, Pa., for plaintiff.

Marsh, Spaeder, Baur, Spaeder & Schaaf, Erie, Pa., for defendant.

MacDonald, Illig, Jones & Britton, Erie, Pa., for intervenor.

## OPINION

WEBER, District Judge.

This action was commenced on March 10, 1967, by the filing of a Complaint in Rem against the vessel alleging a cause of action—civil and maritime for wharfage. It is alleged, on information and belief, that Harold D. Caldwell and Edward Manley, Both of Chicago, Illinois, are the owners of record and that some right, title or interest in the vessel is claimed by the Security-Peoples Trust Company of Erie, Pennsylvania.

The plaintiff claims wharfage from May 1, 1965, and later by an Amendment to the Complaint claims wharfage from November 1, 1964, to the time of filing this action.

A claim has been filed by Harold D. Caldwell, designated as "Trustee", claiming a one-half interest in the vessel, who alleges that he appears in this case as Trustee and solely to defend against Plaintiff's claim to a maritime lien.

The Security-Peoples Trust Company has filed a Motion to Intervene under Rule 24(a) and a claim alleging that it has a maritime lien against the vessel for laying-up expenses, that it has a lien under the Act of Assembly of the Commonwealth of Pennsylvania of June 13, 1836, P.L. 616, and that it has a claim against the vessel under Foreign Attachment proceedings commenced in the Court of Common Pleas of Erie County, Pennsylvania, and later removed to this court as Civil Action No. 55–65 Erie.

Claimant Caldwell has filed a Motion for Summary Judgment moving for summary judgment and dismissal of the action in rem on the grounds that no maritime lien exists because the vessel was laid up and not in the maritime service when the wharfage was rendered, and on the further grounds that the vessel was under attachment by state court process since May 20, 1965, and no maritime lien could attach since that time.

Maritime liens are governed by the Act of June 5, 1920, c. 250, § 30, subs. P, 41 Stat. 1005, 46 U.S.C. § 971. "Any

person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel * * shall have a maritime lien on the vessel, which may be enforced in a suit in rem * * *." This was a re-enactment, in substantially the same language, of the Act of June 23, 1910, c. 373, § 1, 36 Stat. 604.

Putting aside for the moment the question of whether the vessel must be "in navigation", is a lien for wharfage within the purview of the statute? The specific word "wharfage" is not mentioned in this statute, nor in its predecessor. "Wharfage" is defined as the pecuniary charge to which vessels are liable while lying at a wharf, dock or pier. 1 Benedict on Admiralty, § 102, p. 309 (6th Ed., 1940).

Such wharfage charges in the general maritime law would support a maritime lien where the service was rendered upon the credit of the vessel and the other requirements of the maritime law were satisfied. This lien was in turn a prerequisite to an action in rem against the vessel:

> "The right to collect wharfage is a right which has been recognized in admiralty from the earliest times, and it has been repeatedly held that the warfinger has a maritime lien therefor, and no distinction has been made whether the wharf be privately or publicly owned. The Bold Buccleugh, 7 Moore P.C. 269; The Kate Tremaine, Fed.Cas.No.7,622, 5 Ben. 60.

> *     *     *     *     *     *

Wharfage not only includes mooring of vessels for unloading and loading cargo, but also for the purposes of protection and safety, and a maritime lien attaches to the ship in a home port if she is not out of commission or withdrawn from navigation. The George E. Berry (D.C.) 25 Fed. 780; The Allianca (D.C.) 56 Fed. 609; The C. Vanderbilt, 86 Fed. 785." Beard v. Marine Lighterage Corporation, 296 F. 146, 147 (D.C.E.D.N.Y.1924).

In Ex Parte Easton, 95 U.S. 68, at p. 73, 24 L.Ed. 373, it stated:

> "Wharf accommodation is a necessity of navigation and such accommodations are indispensable for ships and vessels and water-craft of every name and description * * * Erections of the kind are constructed to enable ships, vessels, and all sorts of water-craft to lie in port in safety, and to facilitate their operation * * *."

The Maritime Lien Acts of 1910 and 1920 were attempts to codify and clarify the law of maritime liens. They abolished the home port doctrine and the necessity of allegation and proof that credit was given to the vessel. The obscurities remained in the decisional law for a period after the passage of the Acts, and there are many decisions still not specifically overruled which preserve the older distinctions between liens under the specific language of the federal statutes, state created liens and non-statutory general maritime liens.

> "Fortunately, the trend of decision was reversed and we have now reached a point where it is fair to say that for most types of contract liens a uniform pattern has been established, with the Lien Act being looked to as the source of the law and state liens and nonstatutory general maritime liens all but forgotten." Gilmore & Black, "The Law of Admiralty" § 9–31 (p. 539) (1957).

We believe that the weight of authority, both case law and commentators, today holds that wharfage charges give rise not only to general maritime liens but federal statutory liens under the Maritime Lien Act.

> "We think the statutory words 'other necessaries' should not be narrowly interpreted as was done in cases like The J. Doherty [D.C., 207 F. 997], The Hatteras [2 Cir., 255 F. 518], supra, The Muskegon (C.C.A. 2 Cir.) 275 F. 348, The Suelco (D.C.) 286 F. 286, but that they should be given a broad meaning, as they were in The Rupert City (D.C.) 213 F. 263, and

The Henry S. Grove (D.C.) 285 F. 60, and held to include maritime services generally, at least in so far as port charges are concerned, whether such services consist of the furnishing of labor or material. If materials only were furnished there would be no need to add anything to the words repairs and supplies. Towage was included under the circumstances we have already stated, and we see no reason why other maritime services, such as stevedoring, pilotage, and wharfage should not be, since they all give rise to maritime liens." The Western Wave, 77 F.2d 695, p. 698 (5th Cir., 1935).

"The present state of the law is not far from the point where any service which is 'convenient, useful and at times necessary' may qualify as a lien under the Lien Act." Gilmore & Black, op. cit. § 9–34 (p. 543).

"Assuming its maritime nature, almost any type of service claim will today be held with the Lien Act * *." Idem § 9–35 (p. 544).

In holding that a lien under the Maritime Lien Act attaches to a vessel for wharfage, is the present lien claimed by the City of Erie invalid, as claimant alleges, because the vessel is out of navigation, or is under court process?

The court takes notice of other prior and pending proceedings in this court involving the same vessel, Civil Action No. 1106–Erie, Schaaf v. S. S. North American, and Civil Action No. 55–65 Erie, Security-Peoples Trust Co. v. Gilmartin and Caldwell, D.C., 267 F.Supp. 31. It is established from the records of those proceedings, for the purpose of disposition of the present motion, that the vessel was in navigation on June 26, 1964, when a preferred ship mortgage was entered in foreclosure proceedings, and the vessel was attached by the United States Marshal. Sale by the United States Marshal to the Security-Peoples Trust Company was confined on October 31, 1964. At the time of the Marshal's arrest of the vessel in that action, wharfage was supplied under a contract between the then owner, Canadian Holiday S. S. Line and the City of Erie Port Commission. This contract was terminated by written notice on August 17, 1964. The vessel continued to lie at the dock. Navigation on the Great Lakes still being open at that date, the vessel was capable of navigation immediately on Nov. 1, 1964. Sometime shortly after November 1, 1964, proceedings were begun to winterize the vessel at the dock. This is a standard practice for Great Lake vessels by reason of the fact that navigation on the Great Lakes is closed during the winter months, when the Lakes are ice-bound and navigation buoys and markers are removed by the United States Coast Guard. (See The City of Tawas, 3 F. 170 (E.D.Mich. 1880); and The Oswego, No. 2, 23 F. Supp. 311, (W.D.N.Y., 1938), for the seasonal rules applicable to the Great Lakes). This winterizing includes covering up exposed and unprotected parts of the vessel, and disconnecting and greasing valves and mechanical parts. The Court takes notice of this as a standard practice for navigation on the Great Lakes.

Plaintiff, by Amendment to his Complaint in Rem, claims a lien from November 1, 1964, the date upon which title was confirmed in Security-Peoples Trust Company. We do not believe that subsequent transfers of title to the vessel have any effect upon this lien, as the vessel has remained at the same dock site since that date.

The maxim "a ship is made to plough the seas, and not to lie at the walls," (The Poznan, 2 Cir., 9 F.2d 838, 843, quoting from Hughes on Admiralty (2nd ed. 22)), reflects an older, more restrictive interpretation of the maritime lien. See The C. Vanderbilt, 86 F. 785 (E.D. N.Y.1898). Even after the adoption of the Maritime Lien Act of 1930, this "narrow" interpretations continued, particularly in the Second Circuit. Gilmore & Black, op. cit. § 9–34. However, widening interpretation of the Act among courts in the various circuits have departed from this "narrow" approach, and finally, in The Artemis, 53 F.2d 672, (S.D.N.Y., 1931) the court supported a

lien for the winter storage of a yacht. In The Showboat, 47 F.2d 286 (D.C. Mass., 1930), a maritime lien for services and supplies was sustained against a schooner tied to a wharf and used as a restaurant and dance hall because it was a "vessel" under the definition of 1 U.S.C. § 3, capable of being used as a means of transportation on water. In Pleason v. Gulfport Shipbuilding Corp., 221 F.2d 621, (5th Cir., 1955), the court held that the determining factor was a vessel, as defined in 1 U.S.C. § 3 *"capable of being used, as a means of transportation on water."* (p. 623). See also Campbell v. Loznicka (The Scorpio), 181 F.2d 356 (5th Cir. 1950).

Claimants second ground of exception to the claimed maritime lien is the allegation that no lien can attach to a vessel "in custodia legis". The chronology established by the record in this case and the related cases on the docket is as follows:

October 31, 1964—the sale of the vessel to Security-Peoples Trust Company by U. S. Marshal, confirmed by the Court. (Civil Action No. 1106–Erie)

November 1, 1964—date of commencement of wharfage lien claimed by City of Erie Port Commission.

November—December 1964—Winter lay-up of vessel at dock begun by Security-Peoples Trust Co.

November 19, 1964—Agreement of sale of vessel made between Security-Peoples Trust Company and Gilmartin and Caldwell.

May 20, 1965—Action of Security-Peoples Trust Co. v. Gilmartin and Caldwell begun in Pennsylvania courts by service May 25, 26, 1965, of Writ of Foreign Attachment (without bond).

June 10, 1965—Above action removed to United States District Court on Diversity Jurisdiction. (Civil Action No. 55–65 Erie).

July 29, 1965—Opinion and Order of United States District Court in Civil Action No. 55–65 Erie that there was no seizure of the vessel by the Pennsylvania Sheriff under the Pennsylvania Foreign Attachment, plaintiff not having given bond.

March 10, 1967—Complaint in Rem in present action filed and served by the United States Marshal by posting vessel.

We believe that the "custodia legis" rule is inapplicable here. If the rule has any validity we believe that it is confined to an admiralty proceeding where the vessel is in the control of a United States Marshal. Robinson on Admiralty, 348 p. 366. The Pennsylvania Foreign Attachment here was not an admiralty proceeding.

In The Resolute, 168 U.S. 437, 18 S.Ct. 112, 42 L.Ed. 583 (1897), the Supreme Court indicated that the mere fact of possession of the vessel by a state court receiver does not necessarily negative such a lien.

See: The Pacific Hemlock, 3 F.Supp. 305 (W.D.Wash.1933); The Washington, 296 F. 158 (E.D.N.Y.1924); Gilmore & Black, The Laws of Admiralty §§ 9–11 (p. 497) 1957.

The "custodia legis" question has mostly arisen with respect to maritime lien claims, i. e., wages of crew members aboard and wharfage, while a vessel is in the custody of the United States Marshall in a process in rem. In The Poznan, 274 U.S. 117, 47 S.Ct. 482, 71 L.Ed. 955 (1927), the Supreme Court held that it was not required to consider whether a maritime lien could arise while the vessel was in custodia legis because the wharfage claim could be determined and paid as an administrative expense in the distribution proceedings following the sale of the vessel.

At the time of commencement of the city's claim for wharfage here, November 1, 1964, the vessel was clear of all claims, liens, process and restrictive covenants. The confirmation of the sale by the United States Marshal to Security-Peoples Trust Company on October 31, 1964, accomplished this (see Schaaf, Trustee v. S. S. North American, and Chicago, Du-

luth and Georgean Bay Transit Co., Intervenors, 368 F.2d 925 (3rd Cir., 1966).

"If a maritime lien arose at the time such services and materials were furnished it seems clear that a Court of Admiralty could not be ousted from jurisdiction by subsequent changes in the character of the respondent S. S. Charles Van Damme." Arques Shipyards v. The S. S. Charles Van Damme, 175 F.Supp. 871 (1959) (N.D. Calif.)

■ It is a general rule that state created rights have no effect on claims which are here by admiralty law. State created liens against vessels can be enforced in rem only by the federal admiralty court. The Hine v. Trevor, 4 Wall. 555, 71 U.S. 555, 18 L.Ed. 451 (1866); The Moses Taylor, 4 Wall. 411, 71 U.S. 411, 18 L.Ed. 397 (1866). While the court in The C. Vanderbilt, 86 F. 785 (E.D.N.Y., 1898) held that no lien arose against a vessel taken into custody by a state sheriff and moved to a dock for storage, its holding was based on the determination "that she was withdrawn from maritime service, and her changed relation modified the rights of the person affording her wharfage." (p. 792).

■ Generally, where a vessel is in custody under court process, the reason for the maritime lien disappears since the wharfage and custodial costs may be recovered as administrative costs in the legal process, The Poznan, cit. supra, at least by application for a court order for these during the legal process. See Larsen v. New York Dock Co., 166 F.2d 687, (2nd Cir., 1948); Collie v. Fergusson, 281 U.S. 52, 50 S.Ct. 189, 74 L.Ed. 696 (1930).

We will not discuss further the nature of the state court process which the claimant Caldwell relies upon because we have nothing further to add to our opinion and order of July 29, 1965 in Security-Peoples Trust Company v. Gilmartin and Caldwell, Civil Action No. 55–65 Erie. The vessel was not in the custody of the Sheriff of Erie County, Pennsyl-

vania, at the time of its arrest by the Marshal in the present action.

■ We, therefore, hold that the plaintiff had pleaded a proper claim for maritime lien to support his in rem process against the vessel. The Motion for Summary Judgment and/or dismissal will be denied.

The Motion of the City of Erie for leave to amend appears to be timely and proper and amendment will be allowed so that Plaintiff's maritime lien is asserted from November 1, 1964.

The Motion of Security-Peoples Trust Company for leave to Intervene will be granted, it appearing to the court that it claims an interest relating to the property which is the subject of the action appropriate for intervention under Federal Rules of Civil Procedure, Rule 24. The Bank's relationship to this vessel appears at all stages of this proceeding, as well as in the other prior and pending proceedings to which we have referred in the above Opinion.