**MIAMI RIVER BOAT YARD, INC.,**
**Appellant,**

v.

**60' HOUSEBOAT, SERIAL #SC-40-2860-3-62, Appellee.**

**No. 24652.**

United States Court of Appeals
Fifth Circuit.

Jan. 29, 1968.

Linwood Anderson, Miami, Fla., Ralph & Anderson, for appellant.

No appearance for appellee.

Before BROWN, Chief Judge, and GEWIN and WRIGHT,[*] Circuit Judges.

JOHN R. BROWN, Chief Judge:

The Shipyard's libel against the Houseboat in rem asserting a lien for repairs, materials, and dockage under the Maritime Lien Act, 46 U.S.C.A. § 971 (1958), was dismissed on summary judgment presumably because the craft was not a "vessel" essential to the Court's jurisdiction. The successful claimant, neither by appearance, brief nor argument, undertakes to support this holding which, apart from general considerations, maritime or amphibious, without more, simply founders on the plain words of the statutory definition. "The word 'vessel' includes every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C.A. § 3.

The District Judge, perhaps influenced greatly by cases turning on the question of whether an admitted vessel had previously been withdrawn from navigation,[1] thought that status as a "vessel" required an intent that the craft be employed in navigation and commerce either at the moment or in the immediate future, at least under some of our earlier decisions. Notable among these is J. C. Penney-Gwinn Corp. v. McArdle, 5 Cir., 1928, 27 F.2d 324, 59 A.L.R. 1342, 1928 A.M.C. 1323—a case which both here[2] and elsewhere[3] is severely confined to the unique situation of a floating hydraulic dredge being used to make land, not create, improve, or maintain a navigable waterway.

A houseboat is nonetheless a boat because, as its name implies, it affords a water-borne place to live with the added advantage of at least some maritime mobility. That she has no motive power and must, as would the most lowly of dumb barges, be towed does not deprive her of the status of a vessel.

The facts revealed without dispute that Claimant's predecessor had used the Houseboat for its intended purpose at the Flamingo Marina in the Everglades National Park. From there it had made the rather considerable maritime voyage to libelant's shipyard in Miami where she continued to remain afloat during repairs and storage with the expectation that she would be towed away.

The Houseboat was a vessel capable of being subjected to a maritime lien and the District Court was in error in holding that it lacked subject-matter jurisdiction over the vessel in rem. Pleason v. Gulfport Shipbldg. Corporation, 5

[*] Circuit Judge of the District of Columbia Circuit, sitting by designation.

1. See, e. g., Kilb v. Menke, 5 Cir., 1941, 121 F.2d 1013, 1941 A.M.C. 1344; Hercules v. Brigadier Gen. Absolom Baird, 3 Cir., 1954, 214 F.2d 66, 1954 A.M.C. 1201.

2. Judge Foster, again writing for the Court as she had in *J. C. Penney*, distintinguished that case and allowed a lien on a barge not engaged in any venture at

all. See The V-14813, 5 Cir., 1933, 65 F.2d 789, 1933 A.M.C. 1013.

3. See the interesting opinion of Judge Thomsen in Johnson & Towers Baltimore, Inc. v. The Dredge, D.Md., 1965, 241 F.Supp. 598, 1965 A.M.C. 1169 and especially 241 F.Supp. at 601, which, although denying a maritime lien against a dredge employed in sand and gravel operations, cites the numerous other cases from this and other Courts allowing a maritime lien.

Cir., 1955, 221 F.2d 621, 1955 A.M.C. 794; Campbell v. Loznicka, 5 Cir., 1950, 181 F.2d 356, 359, 1950 A.M.C. 756; The Showboat, D.Mass., 1930, 47 F.2d 286, 1931 A.M.C. 19; The Ark, S.D.Fla., 1926, 17 F.2d 446, 1927 A.M.C. 38; cf. The Jack-O-Lantern, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482.

Reversed and remanded.