**M/V MARIFAX, her engines, tackle, apparel, etc., LCU 682, and Island Dredging, Limited, Appellants,**

v.

**Thomas J. McCRORY, Appellee.**

**No. 25052.**

United States Court of Appeals
Fifth Circuit.

March 25, 1968.

J. C. Gramling, Thomas B. Duff, Klein, Moore & Kline, Miami Beach, Fla., Duff, Brown & Gramling, Miami, Fla., for appellants.

Harry Zuckerman, Ehrich & Zuckerman, Miami, Fla., for appellee.

Before TUTTLE and GOLDBERG, Circuit Judges, and HOOPER, District Judge.

PER CURIAM:

After World War II service in the Navy the LCU 682 was berthed in moth ball desuetude until 1963 when she was purchased by R. Fred Irvine. Irvine spent six weeks putting her in condition and then, with himself as master and with crew, sailed her to Miami with a cargo of carborundum stones. She was afloat off Miami for several months when she was towed to Miami Shipbuilding Company for repairs by appellee, preparatory to her use in transporting sand in the Bahamas trade. The charges for these repairs and services were not paid. In 1966 the appellee sued the vessel in rem in the Supreme Court, Bahamas Island, which suit was dismissed on the ground that the British law does not provide a maritime lien for repairs. After this inceptive frustration the appellee brought a suit in rem in the United States District Court against the vessel

and her appurtenances. The district court allowed recovery. We affirm.

The appellee filed his complaint under 46 U.S.C. § 971 which reads as follows:

"Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, *to any vessel,* whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, *shall have a maritime lien on the vessel,* which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel. June 5, 1920, c. 250, § 30, Subsec. P, 41 Stat. 1005." (Emphasis added.)

The appellants contend that to be a "vessel" for purposes of Section 971, a craft must be employed in navigation *or* engaged in commerce. This Court, in Pleason v. Gulfport Shipbuilding Corp., 5 Cir. 1955, 221 F.2d 621, rejected such a limited definition and adopted the definition of "vessel" in 1 U.S.C. § 3, stating in part:

"Section 3 of Title 1 U.S.C.A. is as follows: 'The word "vessel" includes every description of water craft or other artificial contrivance used, or *capable of being used,* as a means of transportation on water.' (Emphasis ours.) This court speaking through Judge Waller in The Scorpio, Campbell v. Loznicka reported in 181 F.2d 356, 358, saw fit to emphasize the words ' "capable of being used" ' in discussing Section 3 of Title 1." 221 F.2d at 623.

This definition was recently followed in Miami River Boat Yard, Inc. v. 60′ Houseboat, 5 Cir, 390 F.2d 596 (1968), where we harbored a lien on a "dumb houseboat." Cf. Producers Drilling Co. v. Gray, 5 Cir. 1966, 361 F.2d 432, 437 (at fn. 3) and City of Erie v. S. S. North American, W.D.Pa.1967, 267 F. Supp. 875, the latter of which confirms the *Pleason* definition after placing it in historical perspective.

The LCU 682, now called M/V Marifax, was not navigably impotent at the time of the appellee's repair work, and certainly she was *capable of being used* in navigation. Even fifteen years of resting inertia does not necessarily destroy navigability.

The other questions raised on appeal have been examined and have no reversible merit.

Affirmed.