**HUDSON HARBOR 79TH STREET BOAT BASIN, INC., Plaintiff,**

v.

**SEA CASA, her engines, tackle, apparel, furniture, equipment and all other necessaries thereunto appertaining and belonging, Defendant.**

No. 79 Civ. 2074(CLB).

United States District Court, S. D. New York.

May 1, 1979.

---

Donna M. Gilligan, Peter Fishbein, Schupak, Rosenfeld & Fishbein, New York City, for plaintiff.

Donald Olman, Rassner, Rassner & Olman, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

In this *in rem* action, plaintiff seeks to enforce a maritime lien for wharfage rendered at its marina to the yacht SEA CASA, currently being used as a houseboat. On April 20, 1979 the houseboat was arrested by the U.S. Marshal pursuant to an *ex parte* order issued pursuant to Rule C(3) of the Supplementary Rules for Certain Admiralty and Maritime Claims. Thereafter, by motion by order to show cause, claimant John Boldt, as owner or agent for the houseboat SEA CASA, *in rem* defendant, has mounted an attack upon the powers and jurisdiction of this Court granted under Article III, § 2 of the United States Constitution, by which the federal courts assert judicial power extending "to all Cases of admiralty and maritime Jurisdiction."

The jurisdictional facts are not in dispute. The defendant SEA CASA is a 35 foot fiberglass houseboat built in 1971. Since June of 1977 and until the events described below, the SEA CASA was berthed at the 79th Street Marina in the Hudson River, operated by plaintiff as a public wharf, under a lease or concession agreement from the City of New York, which fixes the charges for dockage and marine services.

Mr. Boldt asserts, and the plaintiff does not deny, that the vessel has been his "sole residence and home since June of 1977." He states that City and New York State officials recognize the 79th Street Marina as his legal place of residence, as does the United States Post Office, that his residence on the vessel at this pier has been recognized by the Board of Elections as a legal voting residence, and on one occasion, City Housing Authorities relocated a person whose apartment house had been destroyed by fire, to a residence aboard another houseboat. He avers that he has no other residence or place to live other than the houseboat. Unmarried, and age 35, he is employed as a bartender, and prior to June of 1977 had lived for some time at plaintiff's Marina aboard another vessel.

Plaintiff claims to have furnished what it describes as transient dockage service of the reasonable value of $3,888 to the SEA CASA. This claim represents an account for wharfage or dockage. Claimant admits owing $665 as dockage and asserts that there are set-offs available to the vessel. Asserting a maritime lien against the SEA CASA, *in rem*, plaintiff caused an *ex parte* warrant for the arrest of this vessel to be issued by the Clerk of this Court on April 20, 1979, and the warrant was delivered to the United States Marshal, who seized the vessel. An *ex parte* order was signed the same date authorizing the Marshal to deliver the vessel to a custodian appointed for possession and safekeeping of the arrested vessel by this Court.

Mr. Boldt asserts that because of the nature and current use of this particular vessel, the furnishing of dockage services to her will not provide a basis for a maritime lien, or the exercise by this Court of its maritime jurisdiction. This assertion has no legal basis.

The SEA CASA is a "vessel" within the statutory definition of Title 1, United States Code, § 3, which reads as follows:

"§ 3. *'Vessel', as including all means of water transportation.*

The word 'vessel' includes every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water."

Cases referring to houseboats have uniformly held that a houseboat is a vessel in the context of a claim against the houseboat *in rem* asserting a lien for dockage under the Maritime Lien Act, 46 U.S.C. § 971. The best analysis of the rule is found in *Miami River Boat Yard, Inc. v. 60' Houseboat, Ser. # SC–40–2860–3–62*, 390 F.2d 596, 597 (5th Cir. 1968). There, Chief Judge Brown of that Circuit expressed the rule as follows:

"A houseboat is nonetheless a boat because, as its name implies, it affords a water-borne place to live with the added advantage of at least some maritime mobility. That she has no motive power and must, as would the most lowly of dumb barges, be towed does not deprive her of the status of a vessel.

\* \* \* \* \* \*

The Houseboat was a vessel capable of being subjected to a maritime lien and the District Court was in error in holding that it lacked subject-matter jurisdiction over the vessel in rem. *Pleason v. Gulfport Shipbldg. Corporation*, 5 Cir., 1955, 221 F.2d 621, 1955 A.M.C. 794; *Campbell v. Loznicka*, 5 Cir., 1950, 181 F.2d 356, 359, 1950 A.M.C. 756; *The Showboat*, D.Mass., 1930, 47 F.2d 286, 1931 A.M.C. 19; *The Ark*, S.D.Fla., 1926, 17 F.2d 446, 1927 A.M.C. 38; *cf. The Jack-O-Lantern*, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482."

Section 971 of Title 46, United States Code, provides as follows:

"§ 971 *Persons entitled to lien*

Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

In *M/V MARIFAX v. McCrory*, 391 F.2d 909 (5th Cir. 1968) the contention raised here by the owner of the SEA CASA, that a vessel, for purposes of § 971 must be currently employed in navigation or engaged in commerce was expressly rejected. As the Court in *MARIFAX* pointed out, the obsolete Navy vessel in that case "was not navigably impotent at the time of the appellee's repair work, and certainly she was *capable of being used* in navigation. Even fifteen years of resting inertia does not necessarily destroy navigability." (Emphasis in original.) Here the SEA CASA was capable of being used at least to the extent that a "dumb barge" is capable of being used. That the front of the Marina was protected from floating ice by camels which prevented egress from the slip is of no consequence. These could be moved, and the SEA CASA could have been towed from her berth during the winter season. See *City of Erie v. S.S. NORTH AMERICAN*, 267 F.Supp. 875 (W.D.Pa.1967). Traditionally, claims for dockage against yachts have been held to be a proper basis for maritime lien under the statute mentioned above.

From the foregoing analysis it is clear that a floating houseboat capable of being towed from one location to another is a vessel within the admiralty and maritime jurisdiction of this Court. It is not a house or apartment, and the contentions to the contrary asserted by claimant Boldt are without legal basis.

We then turn to the effect, if any, of the order appointing a substitute custodian, made by this Court *ex parte*, effective only after the Marshal had arrested and seized

the vessel, thereby acquiring jurisdiction. The sole purpose of this safekeeping order was to reduce the costs and expenses to the successful claimant of maintaining this rather modest craft which is sought to be subjected to a maritime lien, which is also of relatively modest amount. Practices followed in merchant shipping cases where the U.S. Marshal posts a full-time deputy on the vessel on a 24 hour basis would be prohibitive in cost. In order to obtain a more favorable rate of $6.00 per day, this Court, upon the filing of adequate insurance and a bond protecting the U.S. Marshal against any damages or injury to the vessel, authorized the Marshal to turn possession over to the substitute custodian "Marinas of the Future, Inc.", located in Flushing, New York.

This was done. The vessel, in the hands of "Marinas of the Future," was, and is, in contemplation of law, in the hands of the Marshal and subject to the continued order of this Court. This Court could and can now change the location and custody of the vessel from time to time as the needs of justice may require. The custodian has its marina on navigable water at 125th Street and Northern Boulevard, Flushing, New York, in Queens County. It has extensive wharfage at that location and apparently has adequate facilities and supervision for the safekeeping of this vessel. Few if any equivalent facilities exist closer in distance to the 79th Street Marina.

■ Claimant Boldt now argues that because the County of Queens is in the Eastern District of New York, this Court, by authorizing a substitute custodian to take possession of the vessel from the Marshal and place it in a marina in Queens, surrendered subject matter jurisdiction thereby, and the action should be dismissed. This argument overlooks the statutory provisions concerning the geographic jurisdiction of this District. Section 112(b) of Title 28, United States Code reads in relevant part as follows:

"[§ 112](b) The Southern District comprises the counties of Bronx, Dutchess, New York, Orange, Putnam, Rockland, Sullivan, and Westchester and *concurrently with the Eastern District, the waters within the Eastern District.*" (Emphasis added.)

This District Court has concurrent jurisdiction over the waters at which the wharfage operated by "Marinas of the Future" is located.

■ Claimant asserts further that following transfer of possession to Marinas of the Future, that organization caused the vessel to be lifted out of the navigable waters and placed on dry land in Queens County. This Court does not know for what reason the vessel was taken out of the navigable waters by the custodian. Certainly no provision in this Court's custodial order of April 20, 1979 can be read to allow such action on the part of the custodian, except if in response to an emergency. The Court regards such action as being unauthorized, unless an emergency, such as leakage or damage threatening the vessel required that she be removed from the water. If so, any custodian would have the implied power, and indeed the duty to take such action with respect to the vessel as a reasonably prudent owner would take to protect the vessel from damage. If the act of the custodian was unauthorized and not in response to an emergency, this Court will regard that act as a nullity, ineffective to divest jurisdiction.

■ It is finally claimed that the assertion of this maritime lien constituted harassment and the warrant should be vacated for want of equity. However, claimant does not deny that the vessel was docked at plaintiff's Marina, and it appears likely that she is indebted. A federal statute gave the maritime lien, and federal law provides for its enforcement. The creditor had the right to invoke the processes of this Court under the applicable statute and rules to adjudicate its past due bill. The Court has been informed that various persons having vessels at the plaintiff's facility may have withheld payment of wharfage as a result of ongoing disputes concerning the condition of the facility. Apparently the City of New York, as owner of the pier,

authorized this plaintiff to render wharfage services. The terms of the concession granted to the Marina operator by the City could have provided that the Marina operator collect his past due account by recourse to the Civil Court of the City of New York, and refrain from asserting its maritime lien. The City did not do so. Accordingly, as a maritime lienor, plaintiff may proceed in this Court, notwithstanding that the underlying issue may arise from disputes concerning the performance or not of the concession terms.

The motion by order to show cause issued April 27, 1979 to dismiss the complaint and vacate the attachment is denied.

Bond for release of the vessel is fixed in the amount of $4,000 by cash or good certified check deposited in the registry of the Court or by approved surety bond. If claimant cannot or will not bond the vessel, the interests of justice require an immediate trial. Claimant shall file his pleadings on or before May 8, 1979, and plaintiff shall respond within two days thereafter. The issues in this case will be tried May 14, 1979 at 10:00 A.M. in Courtroom 2704.

So Ordered.